IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| In re:<br><br>Chasen Construction, LLC,<br><br>Debtor. | Case No. 25-12356-NVA<br><br>Chapter 11 |
| Roger Schlossberg, as chapter 11 trustee of the bankruptcy estate of the above-named Debtor,<br><br>Plaintiff,<br><br>v.<br><br>Island Time Ventures, LLC,<br>1521 Concord Pike<br>Suite 201<br>Wilmington, DE 19803<br><br>Defendant. | Adv. No. ____________<br><br>**Complaint** |

Plaintiff Roger Schlossberg, as chapter 11 trustee of the bankruptcy estate of Chasen Construction, LLC ("Debtor" or "Chasen Construction"), states and alleges as follows:

## Introduction

1. This is a simple fraudulent transfer case. A purported construction company fraudulently transferred $127,205.09 to a yacht chartering and management company to pay for yacht services for yachts that were *not* owned by the construction

company and had nothing to do with it. The yachts were instead owned by shell companies the construction company's principals created for themselves to buy yachts for their own use.

2. More specifically, Chasen Construction is a construction company in Maryland and is owned by Brandon Chasen and Paul Davis. Mr. Chasen and Mr. Davis formed three entities that they jointly owned to buy four different yachts. Mr. Chasen and Mr. Davis bought the yachts for themselves and chartered them. Chasen Construction had no ownership in the yachts and was not a party to their purchases.

3. In 2022, Mr. Chasen's and Mr. Davis's entities hired Island Time Ventures to manage and service the yachts and ended up owing Island Time Ventures $127,205.09 for those services. But the entities did not pay Island Time Ventures for those services and instead Chasen Construction paid the $127,205.09.

4. These were textbook fraudulent transfers. Chasen Construction did not own the yachts, had no obligation to pay for the yacht chartering and management services, received no value or consideration for making the payments, and was insolvent when it made the payments. And there certainly was no legitimate business reason for an insolvent construction company to pay expenses for luxury yachts it did not own and Chasen Construction should never have made the payments. Nor can Island Time Ventures reasonably say that it accepted the suspicious transfers in good faith.

5. The Trustee therefore brings this lawsuit against Island Time Ventures to avoid and recover the $127,205.09 for the benefit of Chasen Construction's creditors.

## Jurisdiction, Venue, and Parties

6. Chasen Construction is a Maryland limited liability company that was headquartered in Baltimore, Maryland.

7. On March 19, 2025 ("Petition Date"), petitioning creditors Sandy Spring Bank, A Division of Atlantic Union Bank ("Sandy Spring Bank"), Southland Insulators of Maryland, Inc., and Ferguson Enterprises, Inc. filed an involuntary petition for relief against Chasen Construction under section 303 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland ("Court").

8. By Court order dated March 27, 2025, Roger Schlossberg was appointed chapter 11 trustee of Chasen Construction's bankruptcy estate.

9. On April 24, 2025, the Court entered an order for relief under chapter 11 of the Bankruptcy Code against Chasen Construction.

10. This Complaint is filed under Rule 7001(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

11. This action arises in or is related to a case under title 11 of the United States Code.

12. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a).

13. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O).

14. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

15. As the appointed chapter 11 trustee, the Trustee is authorized to and may bring this adversary proceeding pursuant to 11 U.S.C. §§ 103(a), 323, 544, 546, 550(a), and 551.

16. Pursuant to Bankruptcy Rule 7008, the Trustee consents to entry of final orders or judgment by the Court.

17. Defendant Island Time Ventures, LLC ("Defendant" or "Island Time") is a Florida limited liability company.

## Facts

### I. Chasen Construction was a construction company and had nothing to do with yachts.

18. Chasen Construction was a real estate construction company based in Baltimore, Maryland.

19. Mr. Chasen and Mr. Davis formed Chasen Construction in or around 2017 and jointly own it. Mr. Chasen owns 65% and Mr. Davis owns 35%.

20. Chasen Construction's business purportedly involved construction services relating to the re-development of properties in Maryland. It marketed itself as a business that specialized in converting historic and distressed properties into high-end retail, commercial, residential, and mixed-use spaces.

21. But Chasen Construction generally did not own the properties it was supposedly rehabilitating. Instead, special purpose entities separately owned and controlled by Mr. Chasen and Mr. Davis (collectively, the "SPEs") owned the properties (collectively, the "SPE Properties").

22. The SPEs financed their acquisitions, construction, and development of the SPE Properties with third-party debt, including loans from banks and other third-party investors (collectively, the "SPE Debt"). Under Mr. Chasen's and Mr. Davis's claimed business model, the SPEs would repay the SPE Debt with supposed rental revenue generated from the SPE Properties, which would then be enhanced over time from the construction services that were supposed to be provided by Chasen Construction.

## II. Chasen Construction and the SPEs were insolvent and financially distressed.

23. From at least 2022 to the Petition Date, most or all the SPEs were underwater, insolvent, and over-encumbered. Among other issues:

- the SPE Debt was premised on inflated appraisals of the SPE Properties and fraudulent rent rolls provided by Mr. Chasen and Mr. Davis;
- the SPE Properties did not and could not generate sufficient revenue to service the SPE Debt;
- Chasen Construction did not provide competent and quality construction services to the SPEs; and
- Mr. Chasen and Mr. Davis diverted and siphoned millions of dollars from the SPEs, which should have been used for the construction, development, and management of the SPE Properties, for their own personal benefit and to intentionally enrich themselves.

24. From at least 2022 to the Petition Date, Chasen Construction was also insolvent. Chasen Construction's probable liabilities on its existing debts substantially exceeded the fair market value of its assets, it had unreasonably small capital, and it intended or believed that it would incur debts beyond its ability to pay as they matured.

25. Chasen Construction's principal assets were supposed to be fees and other receivables purportedly owed from the SPEs for the construction services Chasen

Construction was to provide (the "SPE Receivables"). But the SPE Receivables had little or no actual value because:

- many times, Chasen Construction never provided the construction services to the SPEs;
- most or all the SPEs were underwater, insolvent, and over-encumbered, and therefore could not afford to pay fees or other amounts to Chasen Construction; and
- on information and belief, Chasen Construction and the SPEs did not always enter into contracts for the supposed construction services.

26. Additionally, Chasen Construction had millions of dollars of probable liabilities, including millions of dollars of guaranty liabilities to Sandy Spring Bank. For example, in March 2022, Sandy Spring Bank provided a $33.75 million acquisition and construction loan (the "Plaza Debt") to one of the SPEs named CC 201 E Baltimore Street LLC, for a property called the "Plaza" located at 201 E. Baltimore St., Baltimore, Maryland 21202. And although Chasen Construction guaranteed the Plaza Debt, the Plaza Debt substantially exceeded the value of the property, the SPE had no ability to repay the Plaza Debt, and Chasen Construction lacked sufficient assets to satisfy its guaranty obligations to Sandy Spring Bank.

27. Similarly, from and after March 2022, Chasen Construction further incurred millions of dollars of construction trade debt; debt which it could not, and has not, repaid. *See, e.g.*, Proof of Claim Register; Schedules D, E/F.

28. On top of all that, Mr. Chasen and Mr. Davis wrongfully siphoned millions of dollars from Chasen Construction to enrich themselves, fund their extravagant lifestyles, and prop up their unrelated businesses, which made Chasen Construction

even more insolvent. As just one example, from at least 2022 to the Petition Date, Mr. Chasen and Mr. Davis caused Chasen Construction to pay their personal credit card charges, withdrew funds from its business accounts for personal purchases, and used its funds to pay the expenses of their other businesses—*none* of which had anything to do with Chasen Construction's business.

## III. Brandon Chasen and Paul Davis purchased multiple luxury yachts through shell companies that had nothing to do with Chasen Construction.

29. Separate from Chasen Construction, Mr. Chasen and Mr. Davis jointly own CC Hargrave 101, LLC, a Florida limited liability company ("CC Hargrave 101"), formed on or about November 13, 2020, with Mr. Chasen serving as its manager.

30. Mr. Chasen and Mr. Davis formed CC Hargrave 101 to purchase and own a luxury yacht called Limitless ("Limitless"). However, Chasen Construction was not a party to CC Hargrave 101's purchase of Limitless and received no benefit from it.

31. Separate from Chasen Construction, Mr. Chasen and Mr. Davis also jointly own CC Broward 110, LLC, a Florida limited liability company ("CC Broward 110"), formed on or about December 22, 2020, with Mr. Chasen serving as its manager and registered agent.

32. Mr. Chasen and Mr. Davis formed CC Broward 110 to purchase and own a luxury yacht called Alexandra Jane ("Alexandra Jane"). Chasen Construction was not a party to CC Broward 110's purchase of Alexandra Jane and received no benefit from it.

33. Separate from Chasen Construction, Mr. Chasen and Mr. Davis also jointly own CC 116 Princess Lona, LLC, a Maryland limited liability company ("CC 116

Princess Lona"), formed on or about August 18, 2022, with Mr. Chasen serving as its manager and registered agent. Mr. Chasen and Mr. Davis each own 50% of CC 116 Princess Lona.

34. Mr. Chasen and Mr. Davis formed CC 116 Princess Lona to purchase and own a luxury yacht called Princess Lona or My Princess Lona ("Princess Lona").

35. CC 116 Princess Lona purchased Princess Lona on or about September 30, 2022, from Unija Nalozbe LLC ("Seller"), a Slovenian company, for $2,832,611.25. Mr. Chasen signed the "Buyer Closing Statement" for the transaction in his capacity as CC 116 Princess Lona's manager. Chasen Construction was not a party to this purchase and received no benefit from it.

36. At the time of the purchase, Princess Lona was located in Europe. In November 2022, CC 116 Princess Lona had Princess Lona transported from Europe to Florida.

37. On information and belief, CC 116 Princess Lona also owned a yacht called Princess Lona TT, Little P, or Little P TT 32′ ("Little P"). Chasen Construction was not a party to CC 116 Princess Lona's purchase of Little P and received no benefit from it.

38. On information and belief, CC 116 Princess Lona also owned a yacht called Midnight Express ("Midnight Express"). Chasen Construction was not a party to CC 116 Princess Lona's purchase of the Midnight Express and received no benefit from it.

39. Mr. Chasen and Mr. Davis, acting through CC Hargrave 101, CC Broward 110, and CC 116 Princess Lona (collectively, the "Yacht Companies"), rented and

chartered Limitless, Alexandra Jane, Princess Lona, Little P, and Midnight Express (collectively, the "Yachts") to the public.

40. Additionally, Mr. Chasen and Mr. Davis used the Yachts for their own personal purposes.

## IV. Mr. Chasen and Mr. Davis used $127,205.09 of Chasen Construction's funds to pay Island Time for their personal yachting services while Chasen Construction was insolvent and financially distressed.

41. Island Time is a yacht charter and cruise booking company.

42. In or around 2022, the Yacht Companies hired Island Time to provide yacht chartering and management services for the Yachts. This included, but was not limited to, repairs, maintenance, and charter crews for the Yachts.

43. The Yacht Companies, not Chasen Construction, were liable to Island Time for such services. But the Yacht Companies did not pay Island Time for those services. And instead, Mr. Chasen and/or Mr. Davis diverted and used $127,205.09 from Chasen Construction's business checking account at United Bank ("United Account") to pay Island Time for the services. This table summarizes Chasen Construction's transfers to Island Time:

| Transfer Date | Transfer Amount | Transferor | Transferee |
|---|---|---|---|
| 3/29/2022 | $70,000.00 | Debtor | Island Time |
| 11/28/2022 | $57,205.09 | Debtor | Island Time |

44. Island Time knew or should have known that these transfers came from Chasen Construction, not the Yacht Companies, and that Chasen Construction was not liable to Island Time, as only the Yacht Companies were liable to Island Time.

45. Chasen Construction did not receive any benefit, directly or indirectly, from Island Time in exchange for paying $127,205.09 to Island Time.

46. Chasen Construction did not receive any benefit, directly or indirectly, from the services Island Time provided to the Yacht Companies and the Yachts.

47. Chasen Construction had and has no ownership, financial, or other interest in the Yacht Companies or the Yachts.

48. The Yacht Companies are not, and have never been, creditors of Chasen Construction.

49. The Yacht Companies do not hold, and have never held, any ownership, financial, or other interest in Chasen Construction.

50. At all times relevant to the transfers, Chasen Construction was insolvent, Chasen Construction's probable liabilities on its existing debts substantially exceeded the fair market value of its assets, Chasen Construction had unreasonably small capital, and Chasen Construction intended or believed that it would incur debts beyond its ability to pay as they matured.

## V. There are predicate creditors for the Trustee's avoidance claims.

51. Under 11 U.S.C. § 544(b), the Trustee "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

52. At all relevant times, and for the purposes of the Trustee's standing under section 544(b) of the Bankruptcy Code, there were and are creditors who held and who

hold unsecured claims against Chasen Construction that were and are allowable under Bankruptcy Code § 502 or that were not and are not allowable only under Bankruptcy Code § 502(e), including, without limitation, the unsecured creditor Sandy Spring Bank.

53. Sandy Spring Bank filed Proof of Claim No. 2 in Chasen Construction's bankruptcy case, which is incorporated by reference in full herein.

**<u>Count I – Conveyance by Insolvent</u>**
**(Chasen Construction $127,205.09 to Island Time)**
**Md. Code Com. Law § 15-204 and 11 U.S.C. §§ 544(b), 550(a), and 551**

54. The Trustee restates and realleges all of the allegations in this Complaint.

55. Chasen Construction transferred $127,205.09 to Island Time to pay for yacht chartering, management, maintenance, and related services Island Time had provided to the Yacht Companies and the Yachts.

56. Chasen Construction did not receive fair consideration from Island Time in exchange for the $127,205.09 in transfers. In fact, Chasen Construction received no consideration from Island Time.

57. Chasen Construction was insolvent when it made the transfers to Island Time or was rendered insolvent by the transfers.

58. Under Md. Code Com. Law § 15-204 and 11 U.S.C. §§ 544(b), 550(a), and 551, the Trustee is entitled to a judgment against Island Time avoiding the subject transfers and recovering the value of those transfers from Island Time, plus applicable interest.

**Count II – Conveyance by Person in Business**
**(Chasen Construction $127,205.09 to Island Time)**
**Md. Code Com. Law § 15-205 and 11 U.S.C. §§ 544(b), 550(a), and 551**

59. The Trustee restates and realleges all of the allegations in this Complaint.

60. Chasen Construction transferred $127,205.09 to Island Time to pay for yacht chartering, management, maintenance, and related services Island Time had provided to the Yacht Companies and the Yachts.

61. Chasen Construction did not receive fair consideration from Island Time in exchange for the $127,205.09 in transfers. In fact, Chasen Construction received no consideration from Island Time.

62. When Chasen Construction made the transfers to Island Time, Chasen Construction was engaged or was about to engage in a business or transaction for which the property remaining in Chasen Construction's hands after the transfers was unreasonably small capital.

63. Under Md. Code Com. Law § 15-205 and 11 U.S.C. §§ 544(b), 550(a), and 551, the Trustee is entitled to a judgment against Island Time avoiding the subject transfers and recovering the value of the transfers from Island Time, plus applicable interest.

**Count III – Conveyance by Person About to Incur Debts**
**(Chasen Construction $127,205.09 to Island Time)**
**Md. Code Com. Law § 15-206 and 11 U.S.C. §§ 544(b), 550(a), and 551**

64. The Trustee restates and realleges all of the allegations in this Complaint.

65. Chasen Construction transferred $127,205.09 to Island Time to pay for yacht chartering, management, maintenance, and related services Island Time had provided to the Yacht Companies and the Yachts.

66. Chasen Construction did not receive fair consideration from Island Time in exchange for the $127,205.09 in transfers. In fact, Chasen Construction received no consideration from Island Time.

67. When Chasen Construction made the transfers to Island Time, Chasen Construction intended to or believed it would incur debts beyond its ability to pay as they matured.

68. Under Md. Code Com. Law § 15-206 and 11 U.S.C. §§ 544(b), 550(a), and 551, the Trustee is entitled to a judgment against Island Time avoiding the subject transfers and recovering the value of the transfers from Island Time, plus applicable interest.

**Count IV – Conveyance Made with Intent to Defraud**
**(Chasen Construction $127,205.09 to Island Time)**
**Md. Code Com. Law § 15-207 and 11 U.S.C. §§ 544(b), 550(a), and 551**

69. The Trustee restates and realleges all of the allegations in this Complaint.

70. Chasen Construction transferred $127,205.09 to Island Time to pay for yacht chartering, management, maintenance, and related services Island Time had provided to the Yacht Companies and the Yachts.

71. Chasen Construction transferred the $127,205.09 to Island Time with the intent to hinder, delay, or defraud present or future creditors.

72. Chasen Construction was insolvent when it transferred the $127,205.09 to Island Time or was rendered insolvent by the transfers.

73. Chasen Construction did not receive fair consideration from Island Time in exchange for the $127,205.09. In fact, Chasen Construction received no consideration from Island Time.

74. When Chasen Construction made the transfers to Island Time, Chasen Construction intended to or believed it would incur debts beyond its ability to pay as they matured.

75. When Chasen Construction made the transfers to Island Time, Chasen Construction was engaged or was about to engage in a business or transaction for which the property remaining in Chasen Construction's hands after the transfers was unreasonably small capital.

76. Chasen Construction made the transfers at the direction of, and for the benefit of, insiders of Chasen Construction.

77. Chasen Construction and Island Time did not have a relationship that warranted the transfers of $127,205.09.

78. Island Time departed from the usual means of business when it accepted payment from Chasen Construction, a construction company and non-party to the agreements between Island Time and the Yacht Companies.

79. Under Md. Code Com. Law § 15-207 and 11 U.S.C. §§ 544(b), 550(a), and 551, the Trustee is entitled to a judgment against Island Time avoiding the subject

transfers and recovering the value of the transfers from Island Time, plus applicable interest.

**Count V – Conveyance of Partnership Property**
**(Chasen Construction $127,205.09 to Island Time)**
**Md. Code Com. Law § 15-208(b)(2) and 11 U.S.C. §§ 544(b), 550(a), and 551**

80. The Trustee restates and realleges all of the allegations in this Complaint.

81. Chasen Construction is a limited liability company.

82. Island Time is not a member of Chasen Construction.

83. Chasen Construction transferred $127,205.09 to Island Time to pay for yacht chartering, management, maintenance, and related services Island Time had provided to the Yacht Companies and the Yachts.

84. Chasen Construction did not receive fair consideration from Island Time in exchange for the $127,205.09 in transfers. In fact, Chasen Construction received no consideration from Island Time.

85. Chasen Construction was insolvent when it made the transfers to Island Time or was rendered insolvent by the transfers.

86. Under Md. Code Com. Law § 15-208(b)(2) and 11 U.S.C. §§ 544(b), 550(a), and 551, the Trustee is entitled to a judgment against Island Time avoiding the subject transfers and recovering the value of the transfers from Island Time, plus applicable interest.

**Prayer For Relief**

WHEREFORE, the Trustee prays for judgment against Island Time as follows:

A. Enter judgment in the Trustee's favor against Island Time;

B. Avoid the fraudulent transfers alleged herein, and grant the recovery of such transfers from Island Time, in amounts to be determined at trial;

C. Award the Trustee his fees, costs, disbursements, and expenses, including reasonable attorneys' fees, to the extent allowable by law;

D. Award the Trustee pre- and post-judgment interest to the greatest extent allowable by law; and

E. Grant any other relief, including equitable relief, that may be just, proper, and equitable.

Dated**:** October 28, 2026

By: /s/ Frank J. Mastro

**Schlossberg | Mastro**
Frank J. Mastro (D. Md. Bar No. 24679)
P.O. Box 2067
Hagerstown, MD 21742
Telephone: 301.739.8610
fmastro@schlosslaw.com

**Greenberg Traurig, LLP**
Michael B. Fisco (admitted *pro hac vice)*
Michael A. Collyard (admitted *pro hac vice)*
Peter D. Kieselbach (admitted *pro hac vice)*
Peter C. Ihrig (admitted *pro hac vice)*
Robert B. Kearney (D. Md. Bar No. 31830)
90 South Seventh Street, Suite 3500
Minneapolis, MN 55402
Telephone: 612.259.9700
fiscom@gtlaw.com
michael.collyard@gtlaw.com
kieselbachp@gtlaw.com
peter.ihrig@gtlaw.com
robert.kearney@gtlaw.com

*Counsel for the Trustee*